oral argument. The first case for today is 2017-10920, United States v. Barry Bays. Thank you. Good morning, Your Honors, and may it please the Court. My name is Lydia Baird, and I'm going to talk to you today about the 20-point increase that they're doing to the Bays offense level. The bottom line is that what the government's trying to do is punish Mr. Bays for conduct that is lawful. Originally, this case had been tried at the district court level. There had been a conviction for conspiracy to distribute first and remanded, and when it went back down to the district court, the government chose not to prosecute again for conspiracy for controlled substances. What they are trying to do is re-sentence Mr. Bays for controlled substances when there are none. The conspiracy to commit mail fraud for, quote, controlled substances cases are the special rules that the government and then the court imposed in coming up with the 20 additional points. So the district judge, though, did make a finding that it was a controlled substance or that it was an analog of a controlled substance as part of the sentencing? Is that correct or not? There's a difference between an analog or a lookalike or substantial similarity and, quote, controlled substance. Under McFadden, for a controlled substance to be... I understand McFadden, but I'm asking what is required at the sentencing in order to get this enhancement, not what's required statutorily to be convicted of the crime of... I understand what happened with the reversal and all of that, but what is required regarding controlled substance at sentencing? What has to be proven? What you're going to have to have first and foremost is a controlled substance, which you do not have here. So an analog won't work, is what you're saying? Nearly an analog, no. It must be controlled. I know you've split time, so your time's limited. Why do we need a controlled substance? The counts one and two were the counts of conviction. Those are fraud offenses. It's fraud on the government, so we look at loss in the fraud on government context. Why do we need a controlled substance at all? Because what the district court used and what the government used were the sentencing guidelines that were specific guidelines for controlled substances. But it's 2B1.1, so it's a fraud case. You agree it's a fraud case, right? It's a fraud case. So loss is determined by the fraud loss guidelines. But that's not the guidelines that the district court used? Whether you have relevant conduct or not, if you have relevant conduct and you're using the relevant conduct guidelines, you don't have relevant conduct before May 13 of 2013, which is outside of the time that the substances were controlled. Again, time's going to be limited, and this is difficult and complex. But by the time the last addendum was issued, the focus had shifted to gain as an alternate estimate of loss. Okay. Even under gain as the alternate method of determination, there has to be a showing of monetary loss, not something that is speculative. And what the government had talked about in What's your authority for that? In other words, when the federal government is the victim, it's obviously not gaining. FDA is, FDA's concern is that no customer buys something that's mislabeled. And in those contexts, it's very hard to know what a loss is. So the guidelines say you look at proceeds, revenue. How much did your company, your client's company make when the product out there was mislabeled as not for use in humans? What the government argued was purely speculative. They talked about that some customers were arrested, and merely being arrested doesn't have any Why do we care about customers either? This is, count one, is fraud on the federal government. And in those cases, they cite HAAS, H-A-A-S. I'm sure you're familiar with it. When it's January to April, and that's the loss. What's your authority if that's not true? My authority goes back to McFadden. I mean, you cannot punish Mr. Bays for conduct that was legal, and there was nothing illegal about the sale and distribution of these controlled substances. But the prior panel said that's not it. The prior panel said the fact that customers may have been in on the joke, their expression, is no excuse for defrauding the federal government. But once again, Your Honor, what they were using is mail fraud in the context of controlled substances. You have no controlled substance here. The jury verdict was against you. The jury said you defrauded the government and the customers. You're stuck with that verdict. We're just looking at loss. Well, and you don't have loss here under the guidelines that they were using. What about the HAAS case? Just to address, that's the one that really sticks in my mind. The only thing I can tell you is that I think what they've got here is pure speculation. We don't have actual loss. The customers got everything that they had been requested to get was legal. Is the loss measured by what the customers lost or by what the government lost? Well, it seems to be that the government is arguing what the customers lost. That's what the argument seemed to be at the hearing. But the questions today seem to be, I'm trying to figure out, is it a loss to the government or is it a loss to the customers? The government is arguing loss to the customers. He goes through here that, quote, the loss under these alternative provisions were, quote, some persons were arrested. I don't think we have either proof by a preponderance of the evidence and certainly not by beyond a reasonable doubt or in this instance beyond a preponderance of the evidence when you've got speculation. Is it that the customers did not receive what they thought they were getting or there was a misrepresentation of the product? Well, according to what the government argued, what they were arguing is that some customers were arrested. I can't tell you what the product was. I can't tell you which customers. That's not sufficient to be the preponderance of the evidence standard. That's purely speculative and loss requires more than pure speculation. Under those alternative loss provisions, you have to show specific monetary harm, whether the loss is actual loss or intended loss or pecuniary loss. So what's the relief you want? We vacate, remand, and what's going to happen at resentencing? That will be up to the government. Do you think there is no provable loss in a fraud case? That's correct because I don't believe that the conduct that Mr. Bays engaged in is lawful conduct and under what the government is arguing here But you have guilty verdicts that it's not lawful. You can't re-litigate. We have a fraud, count one, on the government. We have a fraud, count two, on the customers. The prior panel, that's law of the case. The customers were defrauded. So what's your position? Is there no loss even though the government and other customers were defrauded? No loss, zero? My position is that you can't increase the base offense level by the additional 20 points. No loss, you're saying? So there's no loss. That's what you showed. No loss. But you acknowledged that the corporate records showed during the period, January to April, approximately $7 million of proceeds. None of that is a loss? Even though all of it was mislabeled? None of that was a loss under what the government was arguing. The theory that the government had that the loss was to the customers, that that was not a loss to the customers? It was not a loss to the customers. The government has the burden of proof, not Mr. Bays. The $7 million of revenue, is that all to real customers or is part of that in the sting operation or any of that? Is that real customers? I think it was real customers, but right now I am drawing a blank on that. So you're not disputing the revenue amount in any way and saying it's not actual revenue of the company? We're disputing revenue in the sense that, again, the mail fraud was based on these sentencing guidelines for controlled substances. Is it your position that they were selling other things too that are part of that revenue? What they're selling over here are these analogs or these substances. Right, but it's the core thing. They don't have sales of other products that are somehow getting mixed up in this analysis. That's correct. This is all with these analogs. Just so that I understand, your position is that in order to get this enhancement, you have to have an actual controlled substance. It has to have been proven that it's an actual controlled substance by a preponderance or beyond a reasonable doubt. I think you have to have the conviction first under McFadden. You're not going to have a conviction for that. That's right. So you cannot use those guidelines that they were using here in the case of a controlled substance because there's no, quote, controlled substance, which means it has to be controlled. It has to be specifically on the schedule. And two, under McFadden, he also has to know that it's controlled. So those other relevant conduct guidelines are just inapplicable in this situation? That's correct. Even under the prior sentence, which is the issue number three, when they were trying to bring in this prior sentence, the 15-year period, I'm sorry. No, your time has expired, but I'm trying to get the... So your position is that you can't use these guidelines at all because there is no controlled substance, and then your other position is under the government's theory of loss, there is no loss, and so it was improper to use gain. That's correct. Okay. Do I have your argument? I believe so. Okay. Who is going to be arguing about the issue with the two-level enhancement for moving to the different state? Me. Oh, he's raising his hand. Oh, okay. Well, I have a question about... So each side can have five more minutes, because we didn't even get to talk about that. Sure. Okay. So on that one, is your position that they moved in order to try to be lawful, not to try to skirt the law? That's correct. And that the evidence supports that this state has laxer laws, and so we like to make the product in the state with the lax laws, and so that's actually compliance, not hiding from the law. Is that your position? Yes. I mean, they complied with the law. I mean, he remained in the state, Indiana, in which they had passed the liberal-like law. If he was trying to skirt the law, he would have moved, too, but he stayed there. They were trying to be legal in what it is that they did. And Aaron Parrish, who was the bookkeeper, did not testify that they moved in order to skirt or evade the law. He specifically was asked, why did you move? And he answered, we moved because Indiana passed a look-alike law. Okay. And the last question that I have is, what is the sentence that you believe was the appropriate sentence here? Not anything that was here. You know, I don't know what the government is going to come back with, but it certainly... If you take away these two enhancements, what is the range? Do you know that? I did not calculate that. I was basing it on an offense level of 35, and that doesn't include the 20-point enhancement. But certainly, if it moves from a Category 3 down to a Category 1, it is 168 to 210. But I believe that that base offense level is 35, so you would have to drop the 20 points off of that, so it is going to be even lower. Okay. Thank you. Can I ask one thing before you? We may not see you again at the podium. With regard to the calculation of the 15-year period, do you concede that, for considering the prior offenses, that the period began on May 15, 1997? That's correct. Okay. And the relevant... But we do not... The disagreement between the government and Mr. Bays is that the relevant conduct period did not begin until May of... I think it was May 16 of 2013. Right. Okay. So all of that was outside of that period, because relevant conduct doesn't start until after that date, after the 15 period of that date. Can I ask one follow-up on that? If count... Would that be true as to count 1-2? I'm sorry, what? The relevant conduct period? Why is it relevant... Why is any sale... Why would it be relevant conduct if they're convicted of a mislabeling offense? Again, because both the government and the district court relied on specific rules or sentencing guidelines, quote, in cases of controlled substances. And they also talked about... They also relied on the other rules for substantial similarity. If you do not have a controlled substance, these particular guidelines do not apply. You cannot convict him in a case of a controlled substance under these guidelines if you don't have a controlled substance. What you're trying... What they're trying to do is backdoor punishment when they could not get a conviction beyond a reasonable doubt for a conspiracy to distribute. If they've got a problem with that, what they need to do is retry the case if that's what they want to do or just drop the whole thing. But the predicate is to have a controlled substance so that those drugs must be scheduled at the time of distribution, which they weren't, and they also have to show that he knew that they were controlled. Thank you. But for your client, there's not an issue on the knowledge like the other... Yeah, there is an issue on the knowledge. They've never proved that he knew it. I mean, this is the same issue that was in phase one. He has a knowledge issue, but your co-counsel has a knowledge issue, David, that he doesn't even know what's going on or something, right? You would have to talk to my co-counsel. Okay, okay. Please record. My name is Scott Anderson. I represent Jared Coleman in this case, and I think that the co-counsel has covered a lot of what we need to cover because I'm limited in my number of issues to basically to the things that you've already covered. I'd like to clear something up for you, Judge, that the count one, which is the misbranding count, is a five-year count, and of course that's defrauding the government. Count two has nothing to do with defrauding the government. Yeah. That's why the Hicks case doesn't apply in that case. Count two specifically states, and this is in my brief, that the victims are I'm sorry, that's a very important point. You may have clarified something I overlooked. Your client's only convicted of count two? No, he's convicted of count one also. So the way I see this case is very simple. There is no controlled substance case left. Right. All there is is a fraud case. That's all there is. And let me narrow it down even more for you, Judge. All there is left is a misbranding case, and you transfer that misbranding case over to a mail fraud case. Well, I actually accept that, too, from my understanding. We'll hear from the government. It's a misbranding case, but then you have a pretty clear path to how you assess loss. No. In this case, there is no loss, and we've said that in our brief. She said it in her brief, and the reason is that you can't get there from here with using the method that the court used, which is the controlled substances route. So does the misbranding itself have to cause the loss? No, no, no, no. But what I'm saying is the only reason this is indicted as a mail fraud case is to add 20 years to whatever sentence they could get. I mean, let's face it, five years on a 371 case is no big deal if you don't get some sort of sentence out of the count three, which was the conspiracy case. So let's stack a little 20-year count, and we can convince the court that this is mail fraud also. I see what you're saying. I see. They have to have count two to get as high as they got. That is correct. Count one caps out at five. Correct. Ah, okay. So that's why this is a very serious matter for not only our defendant, but all that follows in the same reason. So in order to stack this case, and to answer your question earlier about where would the guidelines be on this, this would be a level six on the guidelines because there is no loss. And my client being a criminal history category one, he would be eligible for probation in both cases instead of serving 15 years. Is that just your client or both calculations? No, my client. Oh, okay. Just my client. So it's a very serious matter to him and all who follow him on similar sentencing. There doesn't have to be loss when you have a fraud case, and that's quite commonly the case. I mean, you catch somebody trying to defraud a bank before it goes through, but you have intended loss in that case. In a case like this, you're basically saying your co-conspirators who we didn't indict get to take this as a loss and we get to send you to prison for 20 years. These customers of theirs and the end users are no more than unindicted co-conspirators in that case. So how can you have a loss when somebody A, doesn't complain of loss, and B, is an unindicted co-conspirator? What about the prior panel's remark about, hey, they're in on the joke, it doesn't count? That's what that was all about. They're in on the joke. They're part of this conspiracy but unindicted. Wouldn't you say it would be easy to indict somebody who's the next link in the distribution chain? They did that in the gas pipe case, which was just heard in Dallas. Am I right, though, on Haas, at least to the five years on count one, that when you're defrauding the government, it is really hard to look at loss and therefore you can use proceeds? I thought that was just settled Fifth Circuit law. No. So how do you distinguish? There has to be an intended loss. Well, but when you can't do actual or intended, the guidelines say... That's the Manitoua case that I cite. It's a Tenth Circuit case, but it was Judge Gorsuch who cited it. It's a very recent Tenth Circuit case at page 13 or 14 of my brief. It makes it quite clear. This is right in step with the Sanderson case out of this court. In fact, he cites that case out of this court in making the decision. Can you distinguish the case that Judge Higginson is talking about, though? I mean, I read your brief about Judge Gorsuch's comments and the case that we have that's relied upon, but what about the case that Judge Higginson has mentioned several times, this Haas case? Is there any kind of distinction or is it totally apples and oranges? That does not apply in a case like this. What? Why not? By its own terms. What about its terms? Do you know? There was a reasonably established loss in that case. Because in a footnote, it acknowledges the Tenth Circuit is opposite to us. It's complicated. Okay, it's complicated. We'll figure it out. But it's all very helpful. Actually, I'm less certain about my views now. May I? Okay, so are you urging something about knowledge or not really? The government in their presentation of the sentencing made issue of the fact that they all knew it was a controlled substance anyway. Of course, it wasn't a controlled substance. What they mixed up, the government mixed up their language throughout the trial and throughout the sentencing in this case by using the term synthetic cannabinoids. We're not, nobody can disagree that they used synthetic cannabinoids. Unfortunately, that's not a crime. They're not controlled substances. Thank you. Okay, thank you. May it please the court, Amber Grand for the United States. The appellants in this case asked the court to ignore the plain language of the guidelines to reverse their sentences. But for two reasons, those sentences should be affirmed. The first, the prior panel's decision confirmed the nature of the fraud counts in this case, which was then adopted by the district court for loss calculation purposes. And the second is that the second component of that calculation, the street value, is completely uncontested by the appellants. All of the facts underscoring the street value calculation. But I have real problems with that because the street value multiplied out is more than we know they made. Well, the guidelines made a choice for fraud offenses. I'm just asking you factually, isn't it true? It is. It is $2 million more. It's the same level enhancement. That's an impossibility. Was the district court presented, I'm going to knock this darn thing again. Was the district court presented with, how could you possibly use loss at $9 million if we know they only made $7? That argument was made to the district court. What did the court say? The response is, when you're looking at the different provisions for an offense that involves the controlled substances, the commission felt that the street value was the better measure of culpability. Because as you said- I'm going to interrupt you again, though, because why am I wrong? There is no controlled substantive case left. We've vacated that. It goes back down. You've got two counts. They're fraud counts. I would think the government would be saying, this is a fraud case. We're going to look at fraud loss. I think you get into difficult terrain, but at the moment, Fifth Circuit law that tells you one thing, it may cap out at five, though. It would help if you at least for one or two minutes dealt with that issue. The drug counts were absolutely remanded. There was a joint stipulation by the parties submitted to the trial court after remand that said, we've assessed the guideline exposure for the remaining counts. In the interest of judicial economy, we're not going to retry. It was a three-week trial. We're not going to go through another trial on those counts. There was no admission of lack of knowledge or inability to prove it up. It's a mislabeling case. It doesn't have to be drugs. Just mislabeled. It's mislabeling and it's fraud. This case is different from other mislabeling cases because here we have, if you look at the record, these letters of affirmation that were sent with each and every shipment where they affirmatively represented that these substances were in compliance with both federal and state law. You don't see that in typical misbranding cases. So this takes us outside the realm of something that maybe should be capped at five years to the land of 38 different states were receiving these shipments with letters of affirmation personally signed by Mr. Bays, attesting to their legality when they were in fact illegal controlled substance analogs. So this is not just a misbranding case. This is absolutely a fraud case. Our court on direct appeal limited it to mislabeling. I mean, you've got it. You know by heart. It was mislabeling because it was labeled intended for human consumption. Not so. The court didn't affirm the fraud convictions on the whole controlled substance analog. Oh, they absolutely did. They absolutely did. If you look at the court's decision, count one was based on the participant's awareness of the FDA and their actions taken to circumvent the regulatory guidelines for the FDA. Count two, they specifically found that material misrepresentations were made as to the controlled substances and their status as legal under federal and state law. Okay, if we don't agree with that part, if we do not believe that it was found to be in fact illegal controlled substance analog, that sentence that you just said, if that's gone out of this case, can you do this sentence? Can you still win? If we disagree with that part, what you just said. And I'm not foreshadowing. I'm just asking. Absolutely. We would maintain that the preponderance of the evidence shows that we meet the standard for an analog. However, the alternative ground for affirmance is the gain calculation. And the Haas decision spoke in the alternative. It said whether it's fraud on the FDA or it's fraud on the consumers, both of those are difficult to calculate in a case like this. So we're going to look to the gain. Haas supports using either calculation. So Haas would not be dependent on this five year cap. Because it's really important, although you've got a lot of time. Their heavy argument was this was never argued by the government below, the district court didn't adopt it, and what are your thoughts on that? Which piece was it? Haas mislabeling alone works. The gain calculation was both in the addendums, the PSR addendums, and adopted by the government in its response to the objections, and adopted by the government at sentencing. So the gain calculation... Go ahead, I'm sorry. The gain calculation was absolutely at issue in the lower court, and it supports under count one or count two. These are consolidated counts under 2B1.1. So you're looking at either quantum of loss as it pertains to the FDA or the consumers, but the gain calculation was absolutely at issue in the trial court. Do you not agree that the language of the relevant provision says you must have a loss in order to use the gain? I agree. Okay, where is the proof of existence of a loss to the consumers? You need an existence of loss to the consumers because that's the loss that was urged. So what evidence shows that the consumers or the buyers, the middlemen, that they suffered any financial loss whatsoever in this record? The prior panel found that the record evidence supported that customers actually relied on these affirmative misrepresentations. That's not financial loss. You have to actually say, 12 customers had this and we estimate that each one lost $500 a shipment because they couldn't resell it because they would be in violation, or they did resell it and they went to jail and it cost them $200,000 for their lawyer because they bought... You have no specifics, correct? That's correct, but you can have evidence of a loss that's difficult to quantify. But you have to have actual evidence of a financial loss to begin with. And I will point you to the Inacho case. I'm probably butchering the pronunciation of that name, but in other cases where you've looked at these distribution of products that are represented as one thing, whether it's FDA compliant, prescription drugs, aftermarket products, the courts have found that the consumers, the dollar amount paid out of pocket is your evidence of loss because they paid for something they never received. In this case... They got exactly what they thought they were getting. They were in on it. Not in this case. They got something that was represented to them as lawful, as incompliant with federal and state law. They absolutely... And that's evidenced by the fact that there were customers that received the shipments, didn't trust the letters of affirmation, did their own testing, and when they found out that it contained illegal substances, sent it back. The appellants in that case just redistributed those products to other customers. But those people didn't suffer a loss because they got their money back. They didn't lose. The people who did that did not lose. They got their money back. In this case, the customers that paid money out of pocket for products that were marketed to them, specifically marketed to them as legal pot, were cool guys. We're ahead of the law. There's nothing illegal about this. They absolutely received something that made them vulnerable to legal prosecution under the law, and they suffered a loss as a result. That position has been adopted by a number of circuits. If you look at the Anacho case out of the First Circuit, the Munoz case out of the Eleventh Circuit, and the Boutani case out of the Seventh Circuit, each of those cases confirms that where you have this type of difficult... A loss that's difficult to calculate, but you have customers that paid out of pocket for something they did not receive, the loss exists, and a gain calculation is an appropriate alternative. Did you see some... I understand that argument, but that is independent of... And I'm just going to read our circuit law. Our circuit seems to have taken the position that a loss enhancement is appropriate even when there has been no identifiable loss. That is no longer valid precedent, because an amendment to the guidelines took effect about a year later, saying that you only apply gain when you have a loss, but it's difficult to determine. You're right. Anyway... But the case law... So you are not relying on loss. It has to be the prior panel's determination that they bought assuming it was legal. That's the only theory that gets... And that the record supports actual reliance on those actionable misrepresentations. Well, I appreciate that, Andrew. Notwithstanding that gain calculation, the government does maintain that 3F6... I'm just going to interrupt you. You're very good to know this and tell us that. Am I wrong in remembering the brief that you had cited Haas? And if that's not good... But it wasn't for this proposition. For a different proposition. You're 100% right. Okay, go ahead. The gain calculation, as you mentioned, can be problematic because it's a complex area of determining loss. Yeah, it is complex. That's why looking to 3F6 is the more direct calculation here. The district court took this prior panel's findings, the nature of the fraud. 2B1.1 says you can't calculate loss until you figure out what kind of fraud you have. And so the district court looked and said, what kind of fraud do we have here? The PSR said this fraud involved controlled substances. That's a two-step test. Chemical structure, substantial similarity, and physiological effect. But there's no proof it involved controlled substances anymore. That was wiped out when you made the stipulation, when it was reversed and you made the stipulation. The proof is still in the record, even if the substantive counts are not. You can absolutely still look at the record evidence that was presented at trial to determine that controlled substances were involved. And in fact, this court's decision in Stanford supports that. Stanford was another spice case. It was bounced back after McFadden for lack of mens re. At that time, the court had the remaining counts, which were money laundering and misbranding. And there was a cross-reference in the guidelines that said, if your offense was used in relation to another offense to conceal or further another offense, then apply the guideline provision for that offense. The district court said, even though we've dismissed the drug counts, I'm allowed to look at that as relevant conduct. 1B1.3 lets me look at that even if it's no longer an offense. And I determine by preponderance of the evidence that the other offense in this case was your drug offense, and I apply the cross-reference, and I use 2D1.1 to sentence you because your money laundering was to further that other offense, even though it's not still a count of conviction. This court affirmed that reasoning and that logic, because at that point, your controlled substances are not a count of conviction, but they're absolutely relevant conduct. 1B1.3 specifically says you're going to have different burdens of proof for your counts  Help me a little. So what is the government's, what is your strongest argument to affirm the sentences they got now? Is it a relevant conduct argument? Absolutely. Okay. Absolutely. By preponderance of the evidence, the expert testimony at trial showed that the definition of an analog was met for the substances that were used during the three-month loss calculation period. Those substances, 5FPB22 and PB22, were the only substances used during that three-month period. That's not contested. The experts at trial testified both on chemical structure and physiological similarity. Those are also not contested by the appellants in this case. So the district court said, I find, quote, more than ample evidence in the record from trial that controlled substances were involved. I don't buy your argument that they weren't controlled. So I find that they were involved, and as a result, the street value controls. That does, I mean, McFadden goes to Sienter and an element of defense, it just, there's tension there. They're being sentenced with enormous prison sentences based on something they didn't have Sienter as to. Well, and an additional alternative argument would be, even if you want to read sign turn to it, which you shouldn't, because this court's precedent is clear. If the plain language of the guideline doesn't require knowledge, this court doesn't either. The commission knows full well how to require knowledge, and if you look at Amendment 807, which took effect last week, November 1st, the commission added a four-level enhancement for defendants that knowingly misrepresent or market substances with fentanyl or fentanyl analogs. The commission knows how to put Sienter into an analog enhancement when they want to, and they didn't do it here. And then this court has consistently adhered to the plain language of those guidelines when deciding if Sienter is required. There must have been multiple McFadden remands. We had one or two. Yes. And I'm guessing on resentencing, a lot of these, those counts disappear and all that are left are the conspiracy counts. Is there any best other circuit that's wrestled with a post-McFadden, yes, go ahead. McFadden itself on remand found that there was sufficient evidence of knowledge. But we have a published circuit opinion wrestling with some of these issues, shifting the loss into a world of fraud and yet borrowing back. This is the only case that has applied 3F6 following McFadden. But there is a lot of binding precedent that stands for the proposition that the plain language of the enhancements control. We don't look beyond that. We don't impose a Sienter requirement from a substantive count when that's not at issue. The only thing at issue here is an objective determination that the offense, quote, involved controlled substances. You can find that by preponderance of the evidence. You don't need a jury verdict. You don't need beyond a reasonable doubt. That's a completely different question. Here, if we have a preponderance of the evidence that those substances qualified as analogs, that's all that is required to apply that loss calculation. There are policy reasons that support that calculation. I know it's, like you said, there's tension because it's a large enhancement. But what we have here- Well, on the one hand, we're being criticized for stacking counts. And on the other hand, we're being criticized for not stacking more counts. And so the government made the decision to look at sentencing exposure and say, this is going to be sufficient. We're not going to put everybody through another three-week trial. It's cake and eat it, too. You don't have to prove it, and you still get all the bang for the buck. Well, it was absolutely proven. The evidence was put forth at trial. The district court made- Yeah, but you don't have to do anything else, and you still get it even though you got it reversed. It's a beautiful thing for the government. Well, the proof is there, and the proof is undisputed by the appellants. They don't challenge the expert testimony. They don't challenge the quantity. They don't challenge the street value. The only thing they try to do is ask the court to read a, quote, inherent requirement of signature into an enhancement that doesn't have it. That was their primary argument. Yes. But street value is really hard to use when they didn't even make that much money. Say that again. Well, the street value calculation- Oh, you mean that it's out of proportion with the gain from the conspiracy? But the policy reasons for that are based on the fact that in this type of fraud, where your fraud involves these controlled substances, your culpability is going to be off kilter with the money that you make, the danger to society, the vast nature of the conspiracy. The commission has determined that that may not be the proper measure of the harm that you caused and of the culpability that you should be sentenced for, and that's why that enhancement is there. If they didn't feel like the street value was a better measure, that wouldn't be an enhancement. It's where, as we've discussed at length, the traditional loss calculation is challenging to employ in this type of case. The actually intended loss, it's like fitting a square peg into a round hole. So you've got a guideline provision that fits better. It fits better because there's no question that this offense involved controlled substances. The evidence is clear. And so when your fraud, the nature of your fraud, the central focus of your fraud was misrepresenting to your customers that these substances were lawful. And when that's the type of fraud you have, then you're culpable for the street value of those substances. Counsel, it doesn't appear that the district court made a finding that there was a loss. The district court made a finding about that this is an analog, but the district court never said there was a loss and therefore I'm using the gang. Am I wrong on that? The district court didn't make a dollar amount finding. They didn't even say there was in fact a loss, which is a finding. You could say it's implicit because the court went on to do a game, but that begs the question, did the court know that the law had changed, that you have to have a loss? And the loss argument was kind of just a layup up there in two sentences that was real cursory. The district court did assess it as an alternative calculation. I would agree that the primary focus at the re-sentencing hearing was on the ability to use analogs as controlled substances, but the court did adopt the PSR addendum's alternative calculation that a loss existed, and she adopted all the findings in the PSR, so those findings become her findings. Okay, so she adopted that there was in fact a loss. Absolutely. And that was set forth in the PSR. There was no discussion of that. Not into great detail, but in any detail at all. Tell me why the government has so much trouble with loss. We've had several cases in the past couple of years where we've sent them back and said that they weren't proven or that they're finding people who didn't suffer a loss, and so there was no business saying that there was a loss. I mean, I can think of other panels that I've been on just off the top of my head without doing the research, so what's the issue? Why would you not have some expert come in and go through this all in a big chart and help with all of that? We did have that here. There was an expert, 1,776, I believe, pages of QuickBooks business records that were... That's of their business. That was about how much money they made in their business, but not of the people and what they lost. But the loss here, as defined by other courts that have considered similar cases, is paying for something you don't get. That's how they're quantifying loss in these types of cases. That's difficult to quantify, which is why you wind up using an alternate calculation, but the damage here is I'm paying you for something that you're telling me is legal, and now I'm on the hook of something that is not legal and exposes me not only to additional liability, but I didn't get what I paid for. Okay, so if we don't think that that's true, because we think they were in on it, as the previous court noted, then you don't get this loss? We still do, because the other cases that have made that finding, the customers were also, quote, in on it. Those are pharmaceutical cases where they know they're getting something smuggled in from Mexico. They know they're getting something that hasn't gone through the FDA regulatory process, and they're doing it to get cheaper drugs. The courts in those cases made the same finding. They were in on it. They knew it. But at the same time, they found that if there was some evidence in the record that at least some of the customers thought that they were getting something that was safe or compliant under federal law, that the loss was there. This case is in line with each of those cases that found that even if you're in on it in a certain respect, the loss is still there. Now they were not in on it with respect to the legality. Did they know it was supposed to be smoked? Yes. Did they know that it was for human consumption? Those are not the actionable misrepresentations. Your actionable misreps are the letters of affirmation and the statements made that it's FDA and state law compliant. That's what was relied on to get my money out of my pocket and have you ship that to me because I don't want something that's going to get me in trouble with the law. Those were the misreps that were relied on, and they were not in on that. Absolutely not in on that. They were in on the gig for the spice, but they were not in on whether it was in compliance with federal law. Okay. Can you help me with the two-level enhancement? Yes. And that's only Mr. Bay's challenge in this case. The only thing he's done on appeal is to point to an alternate reasonable inference from the evidence here. Has that pointed any... I don't see what was the basis. I understand his alternate reasonable inference, but I don't understand what supported the other inference. What in the record supports the other inference? There was testimony at trial that when Indiana was prepared to pass its look-alike law that made the manufacture of these substances illegal, the decision was made to move across state lines to Ohio so that they could continue manufacturing and not be under law enforcement scrutiny. But that's a positive thing. You want people to follow law. But then they kept shipping it back to Indiana, and there was this huge point of contention. Kyle Boyer testified, a co-conspirator at trial, that moving across state lines would mean they were going to comply, but then they turned around and kept shipping it right back into the state where they knew that substance was no longer legal. Okay, so it's the shipping it back after they made it. That demonstrates your intent to evade law enforcement, and that's what changed the district court's mind about the inference that applied in this case. Why did they ship it back to Indiana at that point? Make more money. More customers. Was it stored in Indiana and then shipped to the purchasers from Indiana? Manufactured in Ohio and then shipped to gas stations, smoke shops, individual customers in 38 different states. Indiana's prohibition was to the manufacturer of it or possession of it? What specifically was the change in the law? I believe it was to the manufacturer of it, but what they were concerned about is if we stay here, we're going to be under state scrutiny, so we're going to move across state lines and keep shipping it, which was a violation of federal law, a continued violation of federal law at that point. But that's no different than what they were doing already. That's correct, but the action of moving their operations was an act in furtherance of evading law enforcement to further disguise their operations of nationwide shipping the product. I still don't understand that because if it's to comply with the law in one state, so you're not evade... It's to comply with state law, not to evade federal law, because you're already evading federal law either way. All I can speak to that is the evidence showed that five months before they moved, the business and Mr. Bay's home were raided. They were put on notice that what they were doing was potentially problematic. Indiana got ready to pass the law. They decided we're going to move across state lines, but keep shipping. One reasonable inference from that might be they were trying to comply, but an equally sophisticated operator, and at least one reason, not the only reason, but the district court found that at least one reason for moving the business was to evade law enforcement, and that's sufficient for application of the enhancement. I thought there was an employee testimony relied on by the district court. Absolutely. But the employee doesn't say that it was to evade law enforcement. It said that it was to comply with the state law. He doesn't say that either. He says that we moved because the laws were changing. The laws were changing. We want to be with the law. Are you evading or are you complying? I'm asking the question there. The employee testified and the district court drew what inference from that statement? The district court drew the inference that that move was for the purpose of evading law enforcement scrutiny of their operations. Therefore that inference is assessed by us for clear error? Yes. And in this case, plain error as conceded because the grounds for that affirmation, my time is about to expire, but I'd like to finish answering your question. They raise a brand new alter ego argument in their brief that was not raised in the trial court. So it's actually plain error review of that argument, and then they resurface in their reply brief this inference of lawful compliance. So it's plain error review of the argument made in their opening brief that his status as an alter ego remaining behind in Indiana precluded application of that enhancement. If I could briefly conclude, for the reasons previously mentioned, the government would ask that this court affirm the sentence in all respects.  We have your argument. Do you want to say? You have your rebuttal. We did not take it away from you, but it's up to you whether you want to do it. Yeah. I just want to confirm. She had talked about the relevant conduct and that her case was hinging on relevant conduct. The relevant conduct provisions specifically say you have to have reasonably foreseeable acts and furtherance of jointly undertaken criminal activity. And the court in Solis talked about acts can be considered as relevant conduct, but specifically the conduct must be criminal. I want to go back to the position, even though she keeps saying in a conclusory fashion that these are controlled substances because they're analogs, that doesn't make them controlled substances. Mere substantial similarity and the stimulant effect that you get doesn't make it controlled. It must be on this controlled substance list. And in McFadden, Chief Justice Roberts talked about two different substances. One was legal, or one was controlled, which was hydrocodone, and the other one was a look-alike of hydrocodone. And what Chief Justice Roberts said is that both these substances are sometimes used for recreational use. And you don't have someone who would necessarily know that this other look-alike was legal or illegal because it wasn't necessarily known kind of like heroin. So we don't have any criminal activity that's here. With respect to the laws in Indiana changing and the evading, all of this stuff is what the government is reading into. The record doesn't support it. Mr. Parrish had been asked by the prosecutor, why did you move? And his answer was the laws in Indiana were changing. What do you mean the laws were changing? They were getting ready to pass what I believe was a look-alike and we didn't think we were going to be able to continue making the product in the state of Indiana. He never said we moved so we could evade state law. And then in the Bay's opinion, the actual text of the court's Bay's opinion also does not state that they moved to evade the law. What the Fifth Circuit opinion reads is in May 2013, B&B moved its production facility from Indiana to Ohio in response to proposed Indiana legislation concerning spice manufacturing. There is nothing either in the testimony by the employee or in the Fifth Circuit's Bay's opinion that says they moved in order to evade the law. So, I don't see where we're coming up with this two-point enhancement because we don't even have a preponderance of the evidence standard to support that. From what I'm hearing the government saying over and over and over again is we have a controlled substance here and merely reiterating we have a controlled substance doesn't make it controlled. Merely because a substance is a look-alike of a scheduled substance that is controlled under the Controlled Substances Act or the Controlled Substances Analog Act doesn't make it controlled or illegal to sell and distribute. So, none of the substances that we have here were illegal substances at the time of distribution. The government and the lower court cannot punish Mr. Bay's for legal conduct just because the government couldn't obtain a conviction for conspiracy to distribute controlled substances. Thank you. Thank you. We have your argument. This case is submitted. We appreciate the arguments on both sides. They've been very helpful. And we note that counsel for the defense are court-appointed and we appreciate your service to the court. Thank you.